**UNITED STATES of America**

v.

**Joseph John MARRESE, Appellant.**

**No. 14652.**

United States Court of Appeals Third Circuit.

Argued April 24, 1964.

Decided Sept. 10, 1964.

**502**

Felix-Ramon Neals, Jersey City, N. J. (Robbins & Reger, Levy, Lemken & Margulies, Seymour Margulies, Jersey City, N. J., on the brief), for appellant.

1. The defendant, then 19 years old, was sentenced to imprisonment under the Federal Youth Correction Act. He had a criminal record.

Richard A. Levin, Asst. U. S. Atty., Newark, N. J. (David M. Satz, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before KALODNER, FORMAN and SMITH, Circuit Judges.

KALODNER, Circuit Judge.

Following a jury trial, defendant, Joseph John Marrese, was found guilty and sentenced [1] for possession of a sawed-off shotgun on which tax had not been paid in violation of the National Firearms Act.[2]

He prosecutes this appeal on the grounds that (1) the shotgun, used in evidence against him, was obtained by the police in an illegal search and seizure of his room, and (2), his "statement", tantamount to a confession, was the "fruit" of the illegal search, and subsequent illegal detention, and thus inadmissible at the trial. The defendant's motions to suppress the use of the shotgun and statement as evidence were denied prior to the trial.

It is undisputed that on October 3, 1961, the defendant and one George R. Allen, occupied a rented room on the second floor of a rooming house in Hackensack, New Jersey; at noontime that day as they descended to the first floor of the rooming house they were stopped by three local policemen, in civilian clothes, and Allen, after disclosing his identity, was placed under arrest as a deserter from the United States Marine Corps; two of the policemen then went upstairs with the defendant and searched his room although they had neither a warrant for his arrest nor for a search; the policemen found the shotgun in the room, placed the defendant under arrest and then took him to police headquarters where he was questioned until 3:45 P.M., at which time he signed a statement (not used at the trial); the defendant was jailed overnight; he was interrogated at about 10 A.M. of the next day by a fed-

2. Section 5851, Title 26, U.S.C.A.

eral agent who obtained the statement used at the trial, and was then taken before a United States Commissioner at noontime and charged for the first time with a crime.

There is a sharp dispute as to whether the defendant "consented" to the search of his room.

Defendant testified that when Allen admitted his identity, the three policemen drew their revolvers and asked who he was; that they didn't disclose they were policemen; two of them "pushed" him around, and then, at gun point, forced him to lead them to his room on the second floor and ordered him to open the door; they searched the room and found the shotgun which they seized and then took him to a police station where he first learned they were police officers; he was questioned for several hours with respect to various robberies and then signed a statement admitting possession of the shotgun; he was not informed that he was under arrest; he was not allowed to phone anyone.

The policemen involved testified that they disclosed their identity as officers when they first accosted the defendant and Allen; they did not at any time draw their revolvers or push the defendant; one of them asked him if they could look at his room and he said "go right ahead"; two of the officers accompanied defendant upstairs to his room; he opened the door and led them in; they searched the room and found the shotgun and a box of shells; the purpose of the search was to uncover any weapons that Allen might have hidden in the room.

On this appeal defendant contends that he did not "consent" to the search of his room; the search, sans search warrant, was also without probable cause making inadmissible as evidence the seized shotgun; the statement given to the federal officer was obtained during an illegal detention and was thus inadmissible as evidence.

The sum of the Government's position is that (1) the search of the room was "incidental" to Allen's arrest; (2) de-fendant voluntarily consented to the search; (3) "no working arrangement" existed between the police and the federal authorities and the latter were not responsible for the delay in the defendant's being brought before the United States Commissioner.

On review of the record and consideration of the contentions presented we are of the opinion that the search, sans search warrant, and without reasonable cause, was neither "incidental" to Allen's arrest nor "consented to" by the defendant, and was accordingly in plain and flagrant violation of his rights under the 4th Amendment to the Constitution of the United States; that for that reason, the Court below committed prejudicial error in failing to grant the defendant's motion to suppress as evidence the shotgun and shells, and statement, obtained by the federal authorities in the course of an illegal detention, and in further premitting their use in evidence at the trial.

The Government's contention that the search of the room was "incidental" to Allen's arrest is untenable under the principles recently stated by the Supreme Court in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). In rejecting the Government's argument there that the search, without a search warrant, was "incidental to a lawful arrest" the Court said (p. 367, 84 S.Ct. p. 883):

"Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, *to make a contemporaneous search of the person of the accused* for weapons or for the fruits of or implements used to commit the crime. Weeks v. United States, 232 U.S. 383, 392 [34 S.Ct. 341, 344, 58 L.Ed. 652, L.R.A.1915B, 834] (1914); Agnello v. United States, 269 U.S. 20, 30 [46 S.Ct. 4, 5, 70 L.Ed. 145] (1925). This right to search and seize without a search warrant extends to things under the accused's immediate control, Carroll v. United

States, supra, 267 U.S., at 158 [45 S.Ct. 280, at 287, 69 L.Ed. 543, 39 A.L.R. 790], and, to an extent depending on the circumstances of the case, to the place where he is arrested, Agnello v. United States, supra, 269 U.S., at 30 [46 S.Ct. 4, at 5, 70 L.Ed. 145]; Marron v. United States, 275 U.S. 192, 199 [48 S.Ct. 74, 77, 72 L.Ed. 231] (1927); United States v. Rabinowitz, 339 U.S. 56, 60–62 [70 S.Ct. 430, 433, 94 L.Ed. 653] (1950). *The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest."* (emphasis supplied)

Here Allen was arrested on the first floor and the police then proceeded to search the room on the second floor "to find weapons belonging to Allen" on the theory urged by the Government, that "the police may search the deserter's room for instrumentalities used to effect the commission of the crime." Since there wasn't an iota of evidence that Allen had used a weapon in effecting his desertion or had stolen any weapon when he deserted, the Government's theory is little short of capricious. Further, a weapon concealed in a room on the second floor could scarcely have been used by Allen "to assault an officer or effect an escape" while he was in custody of three policemen on the first floor, nor could he have conceivably destroyed the shotgun while he was in such custody.

The Government's second contention that the defendant voluntarily consented to the search falls within the category of what the military euphoniously term "evasive action" when resorting to retirement of their forces to avoid confrontation with the enemy.

■ The basic unalterable fact here is that there was no probable cause to search the defendant's room which the police could possibly have asserted had they sought the issuance of a search and seizure warrant since they did not even know that the defendant existed prior to the time he followed Allen down the stairs to the first floor of the rooming house, and nowhere in the record is there even a suggestion that Allen had used a shotgun "as an instrumentality" to effect his desertion. And where there is lacking probable cause to justify the issuance of a search warrant it inescapably follows, as night follows day, that in the absence of circumstances justifying "contemporaneous searches" as defined in Preston v. United States, supra, local police, or their federal counterpart, cannot engage in "fishing expeditions" in violation of the 4th Amendment guarantees proscribing "unreasonable searches and seizures."

■ What has been said is dispositive of this appeal and makes unnecessary elaboration of the point relating to the admissibility of the statement given to the federal officer. It was the "fruit" of the illegal search and was, accordingly, inadmissible. Wong Sun v. United States, 371 U.S. 471, 484, 485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Silverthorne Lumber Co., Inc. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426 (1920); Gatlin v. United States, 326 F.2d 666, 672 (D.C.Cir. 1963).

For the reasons stated the "Final Judgment and Commitment" will be reversed and vacated, and the cause remanded with directions to the District Court to enter a judgment of acquittal.