**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Johanna RACHEL, Defendant-Appellant.**

**No. 15220.**

United States Court of Appeals Seventh Circuit.

May 5, 1966.

Castle, Circuit Judge, dissented.

Anna R. Lavin, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., John Peter Lulinski, John Powers Crowley, Patrick F. Healy, Asst. U. S. Attys., Chicago, Ill., for appellee.

Before SCHNACKENBERG, CASTLE and SWYGERT, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Johanna Rachel, defendant,[1] appeals from a judgment of the district court based upon a finding of guilty of viola-

tion of 26 U.S.C.A. §§ 4741(a) and 4744 (a) (1), as charged in an indictment, following a trial without a jury.[2]

At the appropriate time defendant filed a petition in the district court to suppress certain evidence on the ground that, on May 9, 1964, she was arrested and a search made of the bedroom which she shared with one Louis Bartemio, in a house in Melrose Park, Illinois, all without warrant, in violation of the fourth amendment to the constitution of the United States. A hearing was conducted on this petition, which the court denied.

It appeared from the testimony of defendant that at the relevant time she was 24 years old and had been employed since she was 12 or 13 years of age; that on May 9, 1964 she was living at 1314 Broadway, Melrose Park, in the home of Mr. and Mrs. Powers, whom she had known since the age of 9 years. She was there temporarily, because her landlord in a Melrose Park apartment made her elect to give up her dog or leave. She and Bartemio had been living together.

According to the testimony of narcotics agent Voll and secret service special agent Plichta, they, in company with another narcotics agent and a number of secret service agents, went to the Powers home at 6 A.M. on May 9, 1964, on the supposition that they were to assist in arresting Bartemio for a violation of counterfeiting laws there being no warrant issued at that time for the arrest of defendant. They gained access to the house. Voll testified that when he entered through a side door he walked through the living room and there saw defendant, Bartemio and Mr. and Mrs. Powers, from whom Bartemio and defendant were subletting a bedroom.

Voll said he had gone out to arrest Bartemio on a suppressed indictment for counterfeiting. He was seated in the living room, wearing trousers, but no shirt. Voll believed that Bartemio was not handcuffed "at that time". De-

1. Hereinafter referred to as defendant.

2. Sentence was imposed but later vacated and suspended when defendant was placed on probation.

fendant wore a house robe over her pajamas.

The other four agents were in the house, but not all in the living room. Some were searching for counterfeiting paraphernalia. Reduced to narrative form, Voll testified:

" * * * We had been told at our briefing meeting that *after the persons were arrested* to look for anything pertaining to counterfeiting matter. I was not looking for anything. I relieved the agent that was in the front room, and the Secret Service agent so that he could search. I was standing in the front room with the four people *under arrest* and watching them. I was in the living room with these four people a few minutes, at which time Agent Plichta called me into the bedroom which is right off the living room. I believe the other agents were conducting a search of the remainder of the house. They may have looked in the basement. I believe they looked in the other rooms of the house. They may have been opening drawers. I did not see any drawers being opened. I also searched for counterfeiting paraphernalia. I *searched, the bedroom,* and the immediate area, the dining room and the living room. I saw one bedroom but I think there were two or three. I saw and searched one. * * * (Emphasis supplied.)

Voll added that *"I had originally been assigned to watch the prisoners."* (Emphasis supplied.)

Referring to special secret service agent Plichta, Voll testified that Plichta called him into said bedroom *about ten minutes after he had gone into the living room to watch the prisoners, and he searched it and determined that the clothing in the closet belonged to defendant.* He testified that he believed *another agent came back to watch the prisoners.* In the bedroom Plichta showed Voll a newspaper containing marijuana. Voll did not at that time call in any of the people seated in the living room. A few minutes lated he called Bartemio "in from the other room". He then called

the landlord in, spoke to him and "let him go back into the living room". He added:

" * * * We talked with the women out in the front room, both of them. At that point, I retrieved the marihuana in the paper bag, the shopping bag with the articles of clothing that were in the bag. * * * I then helped Plichta search the bedroom. * * * We searched the room thoroughly. * * * We were in there quite a while. It may have been an hour."

The district court in finding 7 found that defendant was arrested after the search of the bedroom had been made and a secret service agent saw the bag containing women's clothing and a purse, there being beneath the clothing a package containing marijuana. In finding 8 it found that officers entered the premises with the intention of arresting Bartemio and the search was incidental thereto.

Defendant however contends that she was arrested immediately upon the entry of the agents to the premises and that the search was made after her arrest.

From our detailed consideration of the relevant facts in evidence, it is clear to us that the very nature of the items of female clothing found by the agents in the bag indicated that they were the property of defendant. The inference we think is clear from the evidence that the search as to this property of defendant was not authorized by her and further that she was under arrest prior to and during the search. As a result of this search the marjuana was found.

In Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), it appeared that federal agents stopped a car and thus interrupted the two men therein and restricted their liberty of movement. The court held that these facts constituted an arrest. At 103, 80 S.Ct. at 171 the court said:

" * * * It is, therefore, necessary to determine whether at or before that time they had reasonable cause to believe that a crime had been committed. The fact that afterwards contraband

was discovered is not enough. An arrest is not justified by what the subsequent search discloses, as Johnson v. United States, supra [333 U.S. 10, 15, 68 S.Ct. 367, 92 L.Ed. 436], holds."

The testimony of the government witnesses establishes clearly that defendant, with several other persons, was under arrest and held in custody by federal agents in the sitting room while the agents thoroughly searched the bedroom which had been occupied by defendant and Bartemio. While defendant was thus under arrest the contraband in her bedroom was found and later used for the purpose of prosecution of the case at bar.

Forthrightly narcotics agent Voll stated that, while he had originally been assigned to watch the *prisoners*, he took charge of the marijuana that agent Plichta had found in the bedroom.

Moreover, not only was the marijuana illegally obtained during the search of defendant's bedroom, but the statements made by defendant, while she was under arrest, cannot be used, as they were in the court below, to secure her conviction. As the Court of Appeals held in United States v. Marrese, 3 Cir., 336 F.2d 501, 504 (1964):

"What has been said is dispositive of this appeal and makes unnecessary elaboration of the point relating to the admissibility of the statement given to the federal officer. It was the 'fruit' of the illegal search and was, accordingly, inadmissible. Wong Sun v. United States, 371 U.S. 471, 484, 485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Silverthorne Lumber Co., Inc. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426 (1920); Gatlin v. United States, [117 U.S.App. D.C. 123] 326 F.2d 666, 672 (D.C.Cir. 1963)."

We therefore conclude that the district court erred in not sustaining defendant's petition to suppress the evidence which was found in the search of the bedroom while defendant was under arrest, nor can her statements, while under arrest, be considered to support her conviction.

We therefore reverse the judgment of the district court.

Judgment reversed.

CASTLE, Circuit Judge (dissenting).

I would affirm. If it be conceded that the record establishes that the defendant was the subject of an invalid arrest preceding the discovery of the marihuana in the bedroom among her personal effects, nevertheless, the search and seizure was not an unreasonable one but was made incidental to a valid arrest of Bartemio, who shared the bedroom, effected under a warrant. The search was a reasonable one incident to Bartemio's arrest. The fact of defendant's detention while the search was being made, if improper, is in any event but an irrelevant coincidence. It should not be permitted to poison the fruit of the search so as to make it inadmissible in evidence. And, the statements made by the defendant were made after she and the other persons in the room were advised of their constitutional rights with respect to making any statements.