Richard Dewayne McCLOUD, Appellant,

v.

V. Lee BOUNDS, Director of North Carolina Dept. of Corrections, Appellee.

No. 71–1908.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 8, 1972.

Decided March 16, 1973.

Michael K. Curtis, Greensboro, N. C., court-appointed (Smith, Patterson, Follin & Curtis, Greensboro, N. C., on brief), for appellant.

Edwin M. Speas, Jr., Associate Atty. N. C., Raleigh, N. C. (Robert Morgan, Atty. Gen. N. C., Jacob L. Safron, Asst. Atty. Gen. N. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BOREMAN, Senior Circuit Judge, and WINTER, Circuit Judge.

WINTER, Circuit Judge:

Richard Dewayne McCloud, a North Carolina state prisoner, appeals from the district court's denial of habeas corpus relief. Convicted on charges of safe-cracking, possession of burglary tools, breaking and entering, larceny, and receiving stolen property, he asserted that the state's primary evidence against him was a confession, that the police obtained his confession as a direct fruit of an illegal search, and that it was therefore inadmissible under Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The district court held that the confession was the product of "an intervening independent act of free will" which dissipated the taint of the illegal search. We cannot agree. We conclude that the district court's finding was clearly erroneous and accordingly reverse and direct the writ to issue.

I.

During the evening of March 27–28, 1969, a church in Greensboro, North Carolina was burglarized. At 3:25 that morning, the police chased and apprehended a car driven by Jack Jordan.

His unidentified passenger eluded capture. The police found proceeds of the church burglary and burglar's tools in Jordan's car.

At 5:00 that morning, the police awoke McCloud at a motel where he was staying with his girlfriend. They inquired if he knew Jordan, who was registered in a nearby room. McCloud replied affirmatively. Although the policemen had no warrant, they began to search McCloud's room. When McCloud objected, they left. The police soon returned, *still without a warrant,* arrested McCloud and the girl for occupying a room for immoral purposes, and completed their search of the room. Among the items seized in McCloud's motel room was a peculiarly identifiable coin collection, which had been taken from the home of one Hill in Virginia. On direct appeal, the Supreme Court of North Carolina held,[1] and the state here concedes, that the police had neither a warrant nor probable cause for the search, seizure, and arrest, and that they were therefore illegal.

Later on the 28th, McCloud's bond was fixed at $75,000, an amount which he could not obtain.[2] After administering *Miranda* warnings, the police questioned him for thirty minutes without result. McCloud remained in jail during the ensuing weekend. On March 31, the police again advised McCloud of his constitutional rights and resumed questioning him. This interrogation lasted about three hours. During this session, the interrogating officers sent McCloud's girlfriend and Jordan into the interrogation room to persuade him to confess. Then Officer Welch referred to the illegally seized coin collection and told McCloud that Hill, from whose home it had been stolen, was waiting in the next room to identify the collection. According to Officer Melton's testimony, McCloud then "made the statement that if we would bring the man in there and he identified the coins that he would tell us all about the burglary and any other burglaries that we wanted to ask him about."[3] The coins were brought in and Hill demonstrated to McCloud that he could identify them. McCloud then confessed to the Greensboro church burglary, the Hill burglary, and other burglaries.

## II.

In *Wong Sun,* the Supreme Court held that the "fruit of the poisonous tree" doctrine, which forbids putting illegally seized evidence to any use, applies to verbal as well as tangible evidence.[4] 371 U.S. at 485, 83 S.Ct. 407.

1. State v. McCloud, 276 N.C. 518, 173 S.E.2d 753 (1970).

2. The bond was set at this high amount because McCloud had a record of two burglary convictions and because the police suspected him of a whole skein of burglaries.

3. McCloud denied saying "anything like that." Officer Welch's version of the events corresponds substantially with Officer Melton's:

   He [McCloud] stated that if . . . Mr. Hill would step in there and identify some money, he would tell us anything.

   *       *       *       *       *

   After Jordan went out and I talked to him further, that is when he stated that if Mr. Hill could identify the merchandise he would tell us anything we wanted to know.

4. The state has not challenged the applicability of *Wong Sun* to the states. The Supreme Court has indicated that *Wong Sun's* exclusionary rule is constitutionally grounded and therefore applicable to the states. Fahy v. Connecticut, 375 U.S. 85, 90–91, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). See Traub v. Connecticut, 374 U.S. 493, 83 S.Ct. 1899, 10 L.Ed.2d 1048 (1963) (Per Curiam) ; Jacobs v. Warden, Maryland Penitentiary, 367 F.2d 321, 323 (4 Cir. 1966) ; Young v. State of Maryland, 455 F.2d 679, 683 (4 Cir.) (Sobeloff, J., dissenting on other grounds), cert. den. 407 U.S. 915, 92 S.Ct. 2450, 32 L.Ed.2d 691 (1972) ; United States v. Myers, 398 F.2d 896, 899 (3 Cir. 1968) ; Ruiz v. Craven, 425 F.2d 235, 236 (9 Cir. 1970) ; Phelps v. Decker, 401 F.2d 232, 235 n. 7 (5 Cir. 1968) and cases cited therein. Cf. Parker v. North Carolina, 397 U.S. 790, 796, 90 S.Ct. 1458, 25 L.

See Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920). Thus, if the police use illegally seized evidence to induce or trigger a confession, the confession is not admissible against one who has standing to complain of the illegal search. United States v. Marrese, 336 F.2d 501, 504 (3 Cir. 1964); United States v. Rachel, 360 F.2d 858, 861 (7 Cir. 1966). See Fahy v. Connecticut, 375 U.S. 85, 89–91, 84 S.Ct. 229, 11 L. Ed.2d 171 (1963). The test for determining the admissibility of the confession is "whether, granting establishment of the primary illegality, the evidence . . . has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun*, 371 U.S. at 488, 83 S.Ct. at 417, quoting Maguire, Evidence of Guilt, 221 (1959).

In *Wong Sun*, the police arrested Wong Sun without probable cause. He was arraigned and then released on his own recognizance. Several days later, he returned to police headquarters, was interrogated, and made an incriminating statement. The Court held that this statement was not inadmissible fruit of Wong Sun's illegal arrest because: "On the evidence that Wong Sun had been released on his own recognizance after a lawful arraignment, and had returned voluntarily several days later to make the statement, we hold that the connection between the arrest and the statement had 'become so attenuated as to dissipate the taint.'" 371 U.S. at 491, 83 S.Ct. at 419, quoting Nardone v. United States, 308 U.S. 338, 341, 60 S. Ct. 266, 84 L.Ed. 307 (1939). See United States v. Close, 349 F.2d 841 (4 Cir. 1965), cert. denied 382 U.S. 992, 86 S.Ct. 573, 15 L.Ed.2d 479 (1966).

■ In the instant case, the state urges the court to conclude that Mc-

Cloud was, in effect, an "honest thief." The state posits that McCloud's expression of willingness to confess if Hill identified the coins was a voluntary sporting "wager" which he honorably lost, and that this "wager" constituted an independent intervening act of free will which dissipated the taint of the illegal search. However, the facts do not support this imaginative scenario. Unlike Wong Sun, McCloud had not been released from jail. He did not return voluntarily to make a statement. The police had been interrogating him for three hours. They had Hill waiting in the next room. They knew Hill could identify the coin collection. They confronted McCloud with Hill, with the illegally seized coins and with Hill's identification of them, strong links to the Virginia burglary. While McCloud conditioned his confession on Hill's ability to identify the illegally seized coins, the totality of the circumstances belies the conclusion that McCloud, twice-convicted of burglary, voluntarily risked prison to comply with a so-called "voluntary wager."

McCloud's statement, whether a wager or an expression of resignation, was hardly an intervening independent act of free will which dissipated the taint of the illegal search. Rather, McCloud's confession was "come at by exploitation" of the illegally seized coins, and therefore was inadmissible. *Fahy,* 375 U.S. at 90–91, 84 S.Ct. 229; Jacobs v. Warden, Maryland Penitentiary, 367 F.2d 321, 323 (4 Cir. 1966); Young v. State of Maryland, 455 F.2d 679, 684–685 (4 Cir.) (Sobeloff, J., dissenting), cert. denied 407 U.S. 915, 92 S.Ct. 2450, 32 L. Ed.2d 691 (1972); Amador-Gonzalez v. United States, 391 F.2d 308, 318 (5 Cir. 1968); Barnett v. United States, 384 F. 2d 848, 861–862 (5 Cir. 1967). See Hall v. Warden, 313 F.2d 483, 490 (4 Cir. 1963) (in banc); Ruiz v. Craven, 425

Ed.2d 785 (1970). Note however that doubt has been expressed as to whether this issue has been definitively settled. Clewis v. Texas, 386 U.S. 707, 711 n. 7, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967) (ex-

pressly reserving the question); Outing v. State of North Carolina, 383 F.2d 892, 918–919 (4 Cir. 1967) (Kaufman, District Judge, dissenting); Ralph v. Pepersack, 335 F.2d 128, 136 n. 11 (4 Cir. 1964).

F.2d 235 (9 Cir. 1970). See also Harney v. United States, 407 F.2d 586 (5 Cir. 1969).

Nothing in *Close,* supra, compels a contrary conclusion. *Close* refused to apply *Wong Sun* to statements which the defendant made to an F.B.I. agent while in a state jail following an allegedly illegal state arrest on another matter. The statements consisted of an alibi, which was later contradicted at trial. We held the statement admissible. We construed *Wong Sun* to hold that "a statement which is shown to have been freely and voluntarily made without coercion, either physical or psychological, may be thereby purged of any stigma of illegality . . . ." 349 F.2d at 851. See Rogers v. United States, 330 F.2d 535, 540–542 (5 Cir.), cert. denied 379 U.S. 916, 85 S.Ct. 265, 13 L.Ed.2d 186 (1964).[5] And we found "abundant evidence" that the statements were "freely and voluntarily made." 349 F.2d at 851.

In the instant case, the only evidence of voluntariness is the state's rather imaginative *post hoc* explanation of McCloud's statement. The controlling fact is that the police officers confronted McCloud with the tainted coins and used them, and evidence derived from them, to induce his confession. The manifest causal relationship between the coins and McCloud's confession is the dispositive factor which distinguishes this case from those holding that mere detention following an illegal arrest does not necessarily operate to exclude a voluntary confession made during that detention.[6]

### III.

The judgment of the district court is therefore reversed and the case is remanded with directions to issue the writ. Its effect may, of course, be stayed for a reasonable period to permit the state to try McCloud anew if the state be so advised.

Reversed.

---

5. *Wong Sun,* 371 U.S. at 486 n. 12, 83 S.Ct. 407, and cases cited therein, point out that not every voluntary act is sufficient to cure an unlawful acquisition of evidence, but in *Close,* we thought the voluntary act sufficient.

6. See *Close,* supra; Mefford v. Warden, 413 F.2d 439 (4 Cir. 1969) (Per Curiam), vacated on other grounds, 408 U.S. 935, 92 S.Ct. 2856, 33 L.Ed.2d 750 (1972), aff'g, 270 F.Supp. 745 (D.Md.1967);

Thompson v. Warden, 413 F.2d 454 (4 Cir. 1969) (Per Curiam), cert. denied 397 U.S. 950, 90 S.Ct. 972, 25 L.Ed.2d 131 (1970); *Rogers,* supra. But see Gatlin v. United States, 117 U.S.App.D.C. 123, 326 F.2d 666, 672 (1963) and United States v. Burhannon, 388 F.2d 961 (7 Cir. 1968), supporting the view that an illegal arrest necessarily operates to exclude a confession made during subsequent detention.