Commonwealth vs. Thomas R. Conway.

Suffolk.    March 11, 1974. — September 27, 1974.

Present: Hale, C.J., Keville, & Armstrong, JJ.

Evidence, Relevancy and materiality, Of prior offense. Illegally ob-
tained material. Arrest. Police. Search and Seizure. Consti-
tutional Law, Search and seizure. Statute, Construction. Motor
Vehicle, Unauthorized use.

It was error to admit a police officer's testimony that a criminal de-
fendant said he understood the Miranda warnings "because he had
been busted before." [549-550]
A police officer, without a warrant, could not lawfully arrest a
person for using a motor vehicle without authority knowing that
such use was unauthorized, where the acts constituting that mis-
demeanor were not committed in the officer's presence or view.
[550-553]
In a criminal case, it was error to deny a motion to suppress auto-
mobile master keys seized during a search made incident to an
unlawful arrest. [553]
It was error to deny a motion to suppress a defendant's statement
that keys seized from him incident to an unlawful arrest had been
made by him and his brother "to get into and steal cars." [553-
554]
In a prosecution for using a motor vehicle without authority knowing
that such use was unauthorized, evidence showing only that the
defendant had been a passenger in a motor vehicle which had
been reported stolen was not enough to impute to him knowledge
that its use was unauthorized. [554]

Complaints received and sworn to in the Municipal
Court of the Brighton District on April 11, 1973.

Upon appeal to the Superior Court the cases were tried
before Mason, J.

Geoffrey C. Packard for the defendant.

*Alfred E. Saggese, Jr.,* Assistant District Attorney, for the Commonwealth.

KEVILLE, J. The defendant was tried to a jury in the Superior Court and convicted of using a motor vehicle without authority knowing that such use was unauthorized and of possession of an automobile master key. The case is here on the defendant's bill of exceptions, including exceptions to the denial of the defendant's motions for directed verdicts at the close of the Commonwealth's case. We discuss only those exceptions which have been argued.

There was testimony that on April 10, 1973, Boston police arrived at a liquor store on Harvard Avenue in Allston where they observed an automobile, its windshield broken, lodged against a post in a parking lot adjacent to the store. It was stipulated that fifteen or twenty minutes had elapsed between the time the automobile struck the post and the arrival of the police. From his records, one of the officers determined that the automobile had been stolen earlier that day. [1]

After the automobile struck the post, employees of the liquor store had observed six people in the car including the defendant who was seated in the right front passenger seat. There was a scuffle, then the others fled from the scene leaving the defendant lying beside the car with a head wound. He was assisted into the store. When the police arrived no one was in the automobile. When they entered the store, they observed the defendant seated and bleeding from the head wound. He informed the police that he had been a passenger in the automobile, having been picked up by friends, and that he did not know that the automobile had been stolen.

The defendant accepted the offer of the officers to take him to the hospital for medical treatment. As he entered

---

[1] It was stipulated that the owner of the automobile had reported it stolen from her Allston residence about three hours earlier and that she had not given anyone authority to use it.

the police cruiser, he was arrested without a warrant for using the motor vehicle without authority. On the way to the hospital he was searched.

At this juncture in the testimony of Officer Tobin, one of the arresting officers, a voir dire was held on the admissibility of evidence discovered in the search and of admissions by the defendant made in the station house (a few hours after his arrest) following his return from the hospital. The voir dire revealed that the officers discovered a set of keys in one of the defendant's pockets. One of these keys, which showed evidence of having been filed, was later found by the police to fit the stolen automobile and a similar automobile. See G. L. c. 266, § 49, as amended by St. 1966, c. 269, § 1.

In the station house, after returning from the hospital, he was given the *Miranda* warnings. Later, in the presence of the jury, but not in the voir dire, Officer Tobin testified that the defendant's response to his query whether he understood his rights was that he "knew all that stuff because he had been busted before." At that point the defendant informed the arresting officers that the keys found on his person belonged to him and his brother and that they had made the keys "to get into and steal cars."

The defendant excepted to the judge's denial of his motions to suppress the keys as evidence, to suppress the statements made by the defendant following his arrest, and to strike the statement attributed to him by Officer Tobin in response to the *Miranda* warnings. We discuss the last exception first.

As the defendant has argued, the clear implication of his statement in response to the *Miranda* warnings was that the defendant was a person with a history of arrest and involvement with the police. That he might have been previously arrested was both irrelevant and prejudicial. *Commonwealth* v. *Welcome,* 348 Mass. 68, 70 (1964). The statement should have been struck, accompanied by appropriate instructions to the jury. *Com-*

*monwealth* v. *Gordon,* 356 Mass. 598, 604 (1970). *Commonwealth* v. *Gibson,* 357 Mass. 45, 48-49 (1970), cert. den. 400 U. S. 837 (1970).

The defendant's exceptions to the denial of his motions to suppress evidence of the keys and of his statements following arrest are based upon his assertion that the arrest and search were unlawful and that therefore the keys and his statements concerning them should have been suppressed. Using an automobile without authority knowing that such use is unauthorized, as defined in G. L. c. 90, § 24 (2) (a), subject to exceptions which are not pertinent here, is a misdemeanor. Standards governing warrantless arrest for misdemeanors descend to us from the English common law. See *Carroll* v. *United States,* 267 U. S. 132, 156-157 (1925). Those standards are set forth in *Commonwealth* v. *Gorman,* 288 Mass. 294, 297 (1934). "A peace officer in the absence of statute . . . may arrest without a warrant for a misdemeanor which (1) involves a breach of the peace, (2) is committed in the presence or view of the officer . . . and (3) is still continuing at the time of the arrest or only interrupted, so that the offence and the arrest form parts of one transaction." See Note, Arrest Without a Warrant in New England. 40 B. U. L. Rev. 58, 71-74 (1960). Arrest without a warrant for a misdemeanor not amounting to a breach of the peace was impermissible at common law. *Commonwealth* v. *O'Connor,* 7 Allen 583 (1863). *Commonwealth* v. *Wright,* 158 Mass. 149, 158-159 (1893). *Commonwealth* v. *Dias,* 349 Mass. 583 (1965).

We need not decide whether using a motor vehicle without authority is a breach of the peace (see *Commonwealth* v. *Gorman, supra,* where driving a motor vehicle while under the influence of alcohol was held to be a breach of the peace), for it is clear in the case before us that the offense did not take place in the presence or view of the arresting officer.

As already related, the police appeared on the scene at least fifteen minutes after the automobile had been in use; they did not observe the defendant within the automobile. When they first saw him, he was seated inside the liquor store. Thus authorization for the arrest, if any, must be found in statutory authority where it cannot be justified by application of common law criteria.

The Commonwealth takes the position that the arrest was authorized by statute, G. L. c. 90, § 21, as amended through St. 1972, c. 806, § 32,[2] and that common law standards no longer control. The language of the statute is not explicit whether the offense must be committed in the presence or view of the arresting officer in order to justify a warrantless arrest. Section 21 has been further amended by St. 1973, c. 461, § 1, effective July 1, 1973. That amendment is presumably prospective only (see *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, 3 [1914]; *Yates* v. *General Motors Acceptance Corp.* 356 Mass. 529, 531 [1969]) and thus is not directly applicable to the arrest of the defendant in April, 1973. Nevertheless, it sheds some light upon legislative intent.[3] This amendment affected only arrests for operating a motor vehicle while under the influence of intoxicants by easing the standard of arrest for those offenses by inserting the phrase "or who the officer has probable cause to believe has operated or is operating" in the appropriate sentence of § 21. It is to be observed, however, that the

---

[2] Section 21 in pertinent part reads as follows: "Any officer authorized to make arrests . . . may arrest without warrant . . . whoever uses a motor vehicle without authority knowing that such use is unauthorized."

[3] The preamble to St. 1973, c. 461, reads as follows: "Whereas, [t]he deferred operation of this act would tend to defeat its purpose, which is to authorize the arrests without warrant for certain motor vehicle offenses not committed in the presence of arresting officers on and after the effective date of the law abolishing the crime of public intoxication, therefore it is hereby declared to be an emergency law."

Legislature left unchanged the remainder of the statute including the sentence authorizing warrantless arrests for the use of a motor vehicle without authority.

In many statutes authorizing warrantless arrest for misdemeanors, the intent of the Legislature appears to have been to eliminate the common law breach of the peace requirement while retaining the requirement that the offense be committed in the presence or view of the arresting officer.[4] Further insight into legislative intent with respect to the authority of an officer to arrest without a warrant for a misdemeanor, only when committed in his presence, is gained by an examination of the language of G. L. c. 231, § 94A, inserted by St. 1953, c. 169[5] which recognizes the common law requirement that a misdemeanor take place in the arresting officer's presence where he raises the defense of probable cause when accused of false arrest or imprisonment.

Statutes penal in nature are to be strictly construed (*Commonwealth* v. *Federico*, 354 Mass. 206, 207 [1968]) and uncertainty resulting from a literal reading of the statute is to be resolved in favor of the defendant. *Commonwealth* v. *Hayden*, 211 Mass. 296, 297 (1912). Statutes are also to be construed in the light of preexisting common law. *Ferullo's Case*, 331 Mass. 635, 637 (1954). "A statute is not to be interpreted as effecting a material change in or a repeal of the common law unless

---

[4] See, e.g., G. L. c. 56, § 57 (violation of election laws); c. 91, § 58 (commission of misdemeanor on waterway); c. 111, §§ 171, 173 (tampering with water supply); c. 140, § 131H (unlawful possession of firearms); c. 159, § 104 (hurling objects at train); c. 160, § 220 (riding in other than passenger section of railroad); c. 220, § 3 (conservators of peace, power to arrest upon view of riot); c. 270, § 15 (spitting on public sidewalk); c. 271, §§ 2, 6, 10A (gaming); c. 272, § 60 (rubbish or filth placed in public way); c. 272, § 82 (cruelty to animals); c. 276, § 28 (stealing).

[5] "If a person authorized to make an arrest shall have probable cause to believe that a misdemeanor for which he may make an arrest *is being committed in his presence*, such probable cause shall be a defense in an action brought against him for false arrest or imprisonment" (emphasis supplied).

the intent to do so is clearly expressed." *Pineo* v. *White,* 320 Mass. 487, 491 (1946). *Edgar H. Wood Associates, Inc.* v. *Skene,* 347 Mass. 351, 362-363 (1964).

For these several reasons we agree with the defendant that his arrest in the circumstances was unlawful.[6] As the arrest was unlawful, the search which revealed his possession of the keys cannot be supported as an incident to a lawful arrest. Since revelation of the defendant's possession of the keys resulted from an unlawful search of his person, the motion to suppress them should have been allowed. *Commonwealth* v. *Mekalian,* 346 Mass. 496, 498 (1963). *Commonwealth* v. *Dirring,* 354 Mass. 523, 530-531 (1968). *Beck* v. *Ohio,* 379 U. S. 89 (1964).

There remains the question of the suppression of the defendant's statements to the arresting officers in the station house. Meager details recited in the bill of exceptions indicate that these statements were made about two hours after his arrest, as he was about to be taken to police headquarters for fingerprinting following his return from the hospital. He made the statements to the officers after having been given the *Miranda* warnings.

The "fruit of the poisonous tree" doctrine which forbids putting illegally seized evidence to any use applies to verbal statements as well as to tangible evidence. *Wong Sun* v. *United States,* 371 U. S. 471, 485 (1963). We must determine "whether, granting establishment of the primary illegality, the evidence . . . has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun, supra,* at 488, quoting Maguire, Evidence of Guilt, 221 (1959). See *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385, 392 (1920); *Nardone* v. *United States,* 308 U. S. 338, 341 (1939); *Phelper* v. *Decker,* 401 F. 2d 232, 237 (5th Cir. 1968).

---

[6] The Commonwealth has not argued, and we need not discuss, whether there might have been probable cause for the arrest on some other ground.

It is obvious that there would have been no occasion for a discussion of the keys among the defendant and the police officers had the defendant's possession of the keys not come to light as a result of the arrest and search. It is our conclusion that the statements of the defendant resulted from "exploitation of that illegality," and that it cannot fairly be said that knowledge of the facts disclosed by the statements was "gained from an independent source." *Silverthorne Lumber Co.* v. *United States, supra.* That the defendant was advised of his constitutional rights, without more, would not necessarily attenuate the connection between the unlawful action of the police and the defendant's statements so as to give the latter independent significance. Since there was manifest a causal relationship between the finding of the keys and the statements of the defendant, the statements should have been suppressed. See *McCloud* v. *Bounds,* 474 F. 2d 968, 971 (4th Cir. 1973).

We conclude that the denial of the defendant's motions for directed verdicts on both complaints was unwarranted as the evidence which was properly admissible against the defendant was insufficient to sustain the convictions. On the charge of operating a motor vehicle without authority knowing that such use was unauthorized, the admissible evidence, showing only that the defendant had been a passenger in a motor vehicle (the owner of which had reported it stolen) was not enough to impute to him knowledge that its use was unauthorized. See *Commonwealth* v. *Boone,* 356 Mass. 85, 87 (1969). The exceptions are sustained to each complaint and judgments are to be entered for the defendant.

*So ordered.*