Brady, J.
This case presents the novel issue whether it is lawful for a restaurant to mandate tip sharing or tip pooling amongst its wait staff and others involved in serving its patrons. The issue arises under the following wage payment statute, G.L.c. 149, §152A:
No employer or other person shall solicit, demand, request or accept from any employee engaged in the serving of food or beverage any payment of any nature from tips or gratuities received by such an employee during the course of his employment, or from wages earned by such employee or retain for himself any tips or gratuities given directly to the employer for the benefit of the employee, as a condition of employment; no contract or agreement between the employer or other person and an employee providing for either of such payments shall afford any basis for the granting of legal or equitable relief by any court against a party to such contract or agreement. If an employer or other person submits a bill or invoice indicating a service charge, the total proceeds of such charge shall be remitted to the employees in proportion to the service provided by them. Whoever violates any provision of this section shall be punished by a fine of not more than one thousand dollars and a court may require such employer or other person to make restitution for any tips or gratuities accepted or retained by him in violation of this section.
The basic facts, briefly stated, are as follows. The defendant Pears Company, Inc. owns and operates an upscale French restaurant named L’Espalier in Boston. The defendant Frank McClelland is the President, a principal shareholder of the restaurant and a working chef The four named plaintiffs are former waiters of the restaurant.
Apart from the waiter (called the “front waiter” in L’Espalier parlance), several other employees are involved in the service provided to tables. The maitre d’ greets and seats guests, serves drinks and food when necessary, answers questions about food and wine menus, and generally does what is necessary to ensure smooth and happy running of the restaurant. So called “back waiters” (also known as bussers) bring food from the kitchen, polish the silver and glass, serve water and bread, and reset the table. The sommelier advises on and serves wines. The bartender makes the drinks.
Since the early 1980s, prior to MeClelland’s ownership, the wait staff has shared the shift’s tips pursuant to a formula of which employees were advised and signed onto when hired. Although the genesis of the program may have been a vote of the wait staff in the 1980s, it is now common ground that management determines the formula. Participation is a “condition of employment.” G.L.c. 149, §152A.
On June 24, 2001 the front waiters rebelled, claiming for themselves the right to share their tips as they wish in their discretion. The front waiters, citing a Senate Bill (#72) which would have amended G.L.c. 149, § 152A to make it illegal for restaurants to require participation in a tip pool, refused to submit “their” tips to a pool. Feelings ran high. Those potentially disadvantaged by a waiter-controlled system of voluntary “tipouts,” mainly back waiters, were upset. Refusing to “cool it” for a period as requested by McClelland, the ringleaders were fired. This action followed.
Plaintiffs’ Fourth Amended Complaint[1] is in nine counts, including violation of c. 149, §148A (retaliation) (I), violation of c. 149, §152A (II), violation of c. 149, §159A (III), quantum merit (IV), intentional interference with contractual relations (V), breach of contract (VI), breach of the covenant of good faith and fair dealing (VII), conversion (VIII), and unjust enrichment (IX). Plaintiffs in their summary judgment papers have waived count III.
Plaintiffs move for summary judgment on count I only as to plaintiffs James Fraser and Carla Chrzan, and on count II as to all plaintiffs (§152A). Defendants cross move for summary judgment on all counts.
DISCUSSION
The parties offer two plausible constructions of the statute. Plaintiffs argue that any mandatory system whereby the employer solicits, demands, requests, or accepts any tips for the purpose of reallocating them among servers other than the front waiter is a statutory violation. The defendants counter that because neither the restaurant nor McClelland retained any portion of the tips, they have not run afoul of the statute. The crux of the dispute is control. The issue is whether, under the statute, the employer may exercise dominion over the tips to spread them among those other than the waiter who contributed to the service of the patrons.
The statute has been on the books since 1952 but there are no reported decisions on point. One Califor *256 nia case has interpreted a similar statute in a manner consistent with defendants’ position here. In Leighton v. Old Heidelberg, Ltd., 219 Cal.App.3d 1062 (1990), a waitress, fired for refusing to share her tips, claimed that the employer’s mandated tip pooling arrangement violated Section 351 of the California Labor Code.[2] The verbs of the California statute, “collect, take, or receive,” are like the verbs of the Massachusetts statute, “solicit demand, request or accept.” Both sets of verbs could support an interpretation that the statute forbids any exercise of dominion by the employer over the tips. Nonetheless, the California appellate court held that employer-mandated tip pooling is a policy of common sense and fairness, and that the legislative intent was to insure that employees, not employers, received the full benefit of gratuities that patrons intended for the sole benefit of those employees who served them.
A close reading of Section 152A leads me to the same conclusion. The first clause of the first sentence prohibits the “employer or other person” from soliciting, demanding, requesting or accepting from the employee any portion of the tips received by the employee. The basic situation contemplated by this clause is the patron leaving a cash tip for the waiter who pockets the tip. The second clause of the first sentence reads: “... or retain for himself any tips or gratuities given directly to the employer for the benefit of the employee . . .” That clause presumably contemplates the situation where the patron fills in the tip on a credit card slip, and the funds therefore must pass through the employer.[3] The words “retained for himself” are unambiguous; they forbid the “skimming” which defendants contended is at the heart of the statute. But the words “retain for himself’ in the second clause cannot be construed to prohibit the employer from distributing the tips by a proportional formula among the various eligible servers. It is not reasonable to believe that the Legislature intended to treat the cash-on-the-table situation differently than the credit card tip. Plaintiffs’ argument does not account for the second clause.
That the Legislature did not regard an employer - controlled tip pool as always wrong is made clear by the second sentence of Section 152A: “If an employer or other person submits a bill or invoice indicating a service charge, the total proceeds of such charge shall be remitted to the employees in proportion to the service provided by them.” In that situation the Legislature could have, if it wished, mandated that the service charge included in the bill be paid over to the waiter who served the table. There is, of course, a difference between a tip written into the bill by the restaurant and one voluntarily given by a patron; and the Legislature could rationally have treated those situations differently. It is conceivable that the Legislature aimed to protect the expectation of the patron concerning who would receive his or her tip voluntarily made. But it is impossible to say with any certainty what the expectations of the reasonable patron would be on that point, other then that the tip would go to the workers, not management. Presumably a patron tips well in return for good service, but he or she would have little basis on which to assess the relative degrees of contribution to the good service.
The plaintiffs also argue that the words “or other person” make it clear that an employer violates the statute by enforcing a system under which any person accepts a “tip-out” from a waiter as a condition of employment. I disagree. “Other person” is one of the subjects of the sentence; it would be he or she who would violate the statute by “accepting” part of tips “as a condition of employment.” In this case the “other persons” who are accepting portions of tips are the other servers. They are in no position to set conditions of employment; and it would be irrational to conclude that these recipients could violate the statute.
Plaintiffs cite the attorney general in support of their interpretation. In a document entitled “Commonly Asked Questions about the Massachusetts Wage and Hours Law” attached to plaintiffs’ summary judgment submission, the attorney general apparently opines that service employees cannot be required to pool their tips. I am not persuaded that the attorney general’s interpretation is entitled to “substantial deference.” Compare Dahill v. Police Department of Boston, 434 Mass. 233 (2001) (MCAD “Guidelines” entitled to substantial deference in defining “handicap” in context of corrective devices). The attorney general himself conceded the ambiguity of the statute in his submission to the Senate in support of Senate Bill 72, entitled “An Act to Protect Tipped Employees,” which expressed the need of clarifying legislation because owners and managers of restaurants did not appear to understand the law. The attorney general’s submission is also noteworthy because it stresses the “wrong” to be addressed by the proposed legislation, namely “kickbacks” of part of service employees’ tips to managers and owners of restaurants. That situation is not involved in this case.[4]
Finally, the statute carries criminal penalties. “Statutes penal in nature are to be strictly construed (Commonwealth v. Federico, 354 Mass. 206, 207 [1968]) and uncertainty resulting from a literal reading is to be resolved in favor of defendant.” Commonwealth v. Conway, 2 Mass.App.Ct. 547, 552 (1974).
The remaining counts must also be dismissed. Because the statute as I construe it does not forbid mandatoiy tip-pools, nothing appears on the summary judgment record which would indicate that the plaintiffs have an evidentiary basis for the other common-law counts in the complaint.
ORDER
Plaintiffs’ motion for summary judgment is denied. Defendants’ motion for summary judgment is allowed.

 have allowed plaintiffs’ motion to file a fourth amended complaint.

Section 351 of the California labor code provides: “No employer or agent shall collect, take or receive any gratuity or part thereof, paid, given to or left for any employee by a patron, or deduct any amount from wages due an employee on account of such gratuity, or require an employee to credit the amount, or any part thereof, of such gratuity against and as a part of the wages due the employee from the employer. Each such gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, or left for

This is the usual case at L’Espalier.

For some parts of the relevant time frame in this case the maitre d’, Mr. Risoli, shared in the tip pool. Risoli, in addition to his maitre d' duties, had managerial responsibilities. The maitre d’, in my view, provides “service” to patrons within the meaning of Section 152A, and thus may share in the tip pool. See Chance v. Westban Hotell, Suffolk Superior Court C.A. no. 97-4947, November 27, 2000. The plaintiff James Fraser himself also served as maitre d’ and had managerial responsibilities at certain times.