Lauriat, J.
The Plaintiffs, who are food and beverage service workers, brought this action against Compass Group Foodservice (“Compass”), Chartwells Foodservice, (“Chartwells”) (Compass and Chartwells are referred to jointly as “Chartwells”), Daka, Inc. and Northeastern University (“Northeastern”) alleging that the defendants improperly retained service charges included on customer bills for various events held at the Henderson House in violation of G.L.c. 149, § 152A. The parties are now before this Court on their renewed motions for summary judgment.
BACKGROUND
The plaintiffs are employed by Chartwells, a division of Compass Group Foodservice, as either wait staff or bartenders at Henderson House. Henderson House is a conference center located in Weston, Massachusetts which is owned and operated by Northeastern. Northeastern frequently uses Henderson House to host internal events but also lets the premises to the general public for social and business gatherings.
Northeasten contracts with Chartwells to provide food and beverage services for events at Henderson House. Chartwells’ services include a wait staff and bartenders. The wages of the wait staff and bartenders *568 that work at Henderson House are paid by Chartwells, not Northeastern. Chartwells’ hourly rate for these employees is in the range of$ll-$13. Customers who let Henderson House are billed by Northeastern directly for the food and beverage service provided.
Beginning in 1994, Northeastern added a “service charge” to customer invoices for events held at the Henderson House. This “service charge” is based on a percentage of the amount billed for food and beverage service. Initially, the service charge rate was 5%. This rate gradually increased over the years. In 2001 the “service charge” rate reached 18%, which is the current rate. Northeastern has kept the money generated from this “service charge” in a separate Northeastern “operations” account and has used the money primarily for the upkeep and maintenance of the Henderson House. The money has never been used to compensate Chartwells’ employees.
In March 2002, Northeastern received notice from the Attorney General’s office that a complaint had been filed alleging that Northeastern had failed to remit proceeds from a “service charge” to its wait staff and bartenders. In response to this notice, Northeastern revised its customer invoices by changing “service charge” to “facilities surcharge.” Subsequently, the Plaintiffs filed this action.
DISCUSSION
Summary judgment will be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The court views the facts in the light most favorable to the non-moving party. Williams v. Hartman, 413 Mass. 398, 401 (1992). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue “even if he were to have no burden on an issue if the case were to go to trial.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
I.
The parties’ renewed motions for summary judgment are filed in response to an opinion issued by Judge Muse on January 7, 2004, denying each party’s earlier summary judgment motion. Cooney v. Compass Group Foodservice, Civil Action No. 02-3159 (Middlesex Sup.Ct. January 7, 2004) (Muse, J.) (hereinafter “Order”). Judge Muse withheld judgment for either party, on the ground that the questions of how Northeastern represented the service charge to its customers, and “. . . what the customers intended the money they paid to be used for” remained unanswered. Order at p. 5. This Court concludes that there still remain genuine issues regarding these material facts.
The defendants maintain that the “service charge” on customer’s bills was clearly represented as a surcharge for use of the facility and not a gratuity or tip. They have filed with their motion a “cost estimate sheet” for a wedding reception at Henderson House which denotes a 15% service charge to the customer. The bottom of this document, which was submitted to the customer, gives a clear statement, in bold and all capital letters, that gratuities are given at the option of the consumer.
The plaintiffs counter with evidence that this statement was rarefy given to persons letting the premises for events. In fact, the summary judgment record includes another “cost estimate sheet” for a different function at the Henderson House that does not include the statement regarding gratuities. Further, the affidavit of Linda Gerardi, the administrative assistant to the Compass manager for Henderson House (and a named plaintiff), avers that it was the exception and not the rule to include such wording on that document.
In the defendants’ brief and at oral argument, they claim that whenever customers inquired about the service charge they were told that it was not a gratuity but an additional fee for the upkeep of Henderson House. However, if the customer did not so inquire, then no explanation was given. Moreover, the deposition testimony of Thomas Petrin, general manager of the Henderson House, and Lisa Giles, general manager of Compass’ Henderson House operations, indicate that questions from customers regarding the service charge were veiy rare.
The court notes that a fee called a “service charge” assessed to a person renting a banquet hall where food and drinks are served, where such a charge is calculated as a percentage of that person’s food and beverage purchases alone, bares a striking resemblance to a flat gratuity fee assessed to large groups at a typical restaurant. Couple this observation with the fact that for some significant amount of time this fee was in the general range of 12% to 18% of a party’s food and beverage purchases, and the similarity becomes even more apparent. Considering that the defendants themselves admit that language explaining the tip policies at Henderson House was not placed on all customers’ billing documents, a customer renting Henderson House may reasonably have believed that the service charge he or she paid was a gratuity for the wait staff.
The question of whether Henderson House consumers reasonably believed that the “service charge” was a gratuity is both genuine and material to this case. Summary judgment is therefore denied for both par *569 ties. This denial of summaiy judgment shall be limited to the time period from when the service charge was first assessed to customers, to the date in March of 2002, when the fee was designated a “facilities surcharge.”
II.
Northeastern also contends that the term “service charge” in the previous version of G.L.c. 149, §152A, was ambiguous, and that this year’s amendment to the law merely clarifies that the charge at issue is outside the scope of this law. G.L.c. 149, §152A(2004). The ambiguity in the statute is proven, they argue, because a specific definition for the term “service charge” was inserted into the law though the 2004 amendment. G.L.c. 149, §152A (2004). The defendants request that this ambiguity be resolved in their favor.
It is important to first consider the statutory language under which the plaintiffs seek to impose liability: “If an employer or other person submits a bill indicating a service charge, the total proceeds of such charge shall be remitted to the employees in proportion to the service provided by them.” G.L.c. 149, §152A (1983). The statute, as amended, adds a definition section, where a “service charge” is a
. . . fee charged by an employer to a patron in lieu of a tip to any wait staff employee, service employee, or service bartender, including any fee designated as a service charge, tip, gratuity, or a fee that a patron or other consumer would reasonably expect to be given to a wait staff employee, service employee, or service bartender in lieu of, or addition to, a tip.
G.L.c. 149, §152A.
Northeastern claims that the amendment illustrates the legislative intent that only fees assessed to customers in the nature of a tip or gratuity were included within the term “service charge.” Because Northeastern never intended this charge to be a tip or gratuily, it argues that it cannot be in violation of that law. However, as the statute (and Judge Muse’s Order) states, the most important inquiry is whether the customers, not the establishment, reasonably expected the charge to go to the wait staff. G.L.c. 149, §152A; Order at p.5.
Thus, the court cannot accept this interpretation of the scope of G.L.c. 149, §152A. The definition of “service charge” in the amended statute merely states that, no matter what label an establishment may place upon it, if a fee is submitted to a customer who would reasonably expect it to be given to the wait staff, all money collected through that fee from the customer must be paid to the wait staff. An establishment may no longer circumvent the law by using a different name for the fee if a customer would still have this reasonable expectation.
Northeastern asserts only that their fee is outside the scope of the previous law because they never intended to give it to the wait staff, but the amendment indicates that the legislature was concerned with protecting the expectation of the customer. Northeastern has presented no argument that would convince the court that the previous version of G.L.c. 149, §152A did not seek to protect this expectation.
Therefore, even in light of the amendment to G.L.c. 149, §152A, the service charge submitted to customers of Henderson House is within the scope of the statute and summaiy judgment for Northeastern on this ground is denied.
III.
Northeastern has also argued that it is not a member of the class to which G.L.c. 149, §152A applies. It claims that because it is not the “employer”[1] of the wait staff, (i.e. it is not responsible for payment of wages or supervision of the staff) the statute is not applicable to it.
Judge Muse has indirectly addressed this issue in his Order. The judge determined that Chartwells could not be liable under G.L.c. 149, §152A because “(i]t is undisputed that Northeastern placed the service charge at issue on customer invoices at Henderson House and collected the same. Chartwells merely sent the plaintiffs to Henderson House to work.” Order at P-4.
As stated above, because G.L.c. 149, §152A, as amended, places a premium on what the patron would “reasonably expect to go to the wait staff,” the court concludes that such an intent may be inferred from the previous version. A Henderson House guest may not be aware (and in fact, is probably not aware) that the wait staff at the banquet hall are actually subcontracted by Northeastern from Chartwells. However, that same patron could still form a reasonable expectation that the service charge billed to him or her is a gratuity that will go to the wait staff.
Most importantly, the previous version of the law stated “(i]f an employer or other person submits a bill indicating a service charge . . .” G.L.c. 149, §152A (1983) (emphasis added). This language does not require that the entity submitting such a service charge be the actual employer, but simply have submitted the charge to the customer. For this reason, and for those set forth above, the court determines that Northeastern’s actions, with respect to the service charges that it alone submitted to customers of Henderson House, do fall within the scope of G.L.c. 149, §152A.
IV.
Finally, Northeastern contends that it is entitled to summaiy judgment for the period after the term “facilities surcharge” was substituted for “service charge” on cost estimates and bills to customers of Henderson House. After this change was made, which occurred *570 at some point in March of 2002, Northeastern claims that there could no longer be any reasonable expectation on the part of the patrons that the charge would be given to the wait staff.
The court agrees that after the name of the fee was changed, a patron could no longer form a reasonable expectation that the fee would go to the servers. Judgment will therefore enter for Northeastern for the period following its alteration to the charge’s designation in March of 2002.
ORDER
For the foregoing reasons, Defendant Northeastern University’s Renewed Motion for Summary Judgment on Count I is ALLOWED IN PART and DENIED IN PART Defendant’s motion is ALLOWED solely for the time period following its substitution of the term “facilities surcharge” for “service charge” upon bills and related documents presented to Henderson House customers beginning in March 2002. Northeastern’s motion is otherwise DENIED. The Plaintiffs’ Renewed Cross-Motion for Summary Judgment is DENIED.

The contract between Northeastern and Chartwells states that Chartwells will be the “sole employer” of the wait staff at Henderson House.