Billings, Thomas P., J.
For the reasons that follow, the plaintiffs’ Motion for Summary Judgment is ALLOWED IN PART and DENIED IN PART.
FACTS
The nine plaintiffs were members of the waitstaff at The Beverly Depot, one of several restaurants owned by the defendant, Barnsider Management Corporation. Seven of them (Marie Moore, Nancy McElman, Katherine Peironi, James Soul, Erin White, Diane Worth, and Shawn Wiley) allege that they left the defendant’s employ prior to September 2004. One (Kelly Daly), added by amendment in March 2006, avers in her affidavit that she worked from June 2000 until March 2005. Concerning the ninth (Michael Hoffman), the record does not disclose whether he continued working on or after September 8, 2004 (the significance of which date will appear below).
In this action the plaintiffs seek, on behalf of themselves and others similarly situated (see G.L.c. 149, §150, second para.), restitution, treble damages, and attorneys fees on account of what they allege — and the defendant denies — was a compulsory tip-sharing system by which waitstaff remitted a percentage of tips to the kitchen staff.
The summary judgment record establishes, as not subject to genuine dispute, that servers at The Beverly Depot were paid $2.63 an hour, plus tips. They shared their tips with kitchen staff. How the tip-sharing practice came about, however, and whether it was mandatory or voluntary, is in dispute.
A. The Plaintiffs’ Affidavits
Five of the plaintiffs have submitted affidavits. Among them, they aver that when servers were hired, they were told that it was the restaurant’s policy, or “the way things were done,” that 4% of server tips were to be shared with kitchen staff. The message was reinforced with managers’ advisories that if servers wanted their orders to come out of the kitchen on time and prepared correctly, they needed to tip out the kitchen staff. At least one server was told by managers that they knew the policy was illegal, but that she had to follow it if she wanted the job. (This server complained about the policy, and was fired a week later.)
The topic was discussed at a meeting in 1999 at which the restaurant’s then owner, Bill Swanson, told the servers that if they stopped tipping out the kitchen, he could not guarantee that they would get their staff meals and could not help them with any problems with the preparation of customers’ meals.
Sometime in early 2004, management announced to the servers that the “tip-out” amount was being changed from 4% to 1%. The “tip-out” policy was stopped in October or November 2004 for a few months, but then was reinstated and continued until at least March of 2005.
B. The Defendant’s Affidavits
Barnsider has submitted two affidavits.
Bruce Canario, the General Manager of The Beverly Depot, avers that since he took the position in March 2004, “there has never been a policy requirement or suggested practice that the servers pay any portion of their tips to kitchen staff.” “To the extent” that this has occurred, “that has been on an entirely voluntary basis and has never been anything that has ever been required by Barnsider Management Corp. or any of the managers at The Beverly Depot.”[1]
*314 William Swanson is one of the restaurant’s owners. He says:
Since current ownership took over in April 1990, there has never been a policy requirement or suggested practice that the servers pay any portion of their tips to kitchen staff.
To the extent that any servers have in the past shared their tips with the kitchen staff, that has been on an entirely voluntary basis and has never been anything that has ever been required by Bamsider Management Corp. or any of the managers at The Beverly Depot.
Swanson therefore avers that the server/affiant’s statements “regarding a mandatory tip sharing are false.” Neither Canario nor Swanson appears to deny that there was a tip-sharing practice, or that the restaurant was aware of it.
DISCUSSION
By their Motion, the plaintiffs seek summary judgment as to liability on Count I (violation of G.L.c. 149, §152A) and Count II (violation of G.L.c. 151, §§1 and 7).[2]
A. G.L.c. 149, §152A, Old and New
The disposition of server tips at restaurants is governed by G.L.c. 149, §152A. At the time the Complaint in this case was filed (July 2004), the statute provided as follows. (For ease of reference, I have here numbered the sentences.)
No employer or other person shall solicit, demand, request or accept from any employee engaged in the serving of food or beverage any payment of any nature from tips or gratuities received by such employee during the course of his employment, or from wages earned by such employee or retain for himself any tips or gratuities given directly to the employer for the benefit of the employee, as a condition of employment; and no contract or agreement between an employer or other person and an employee providing for either of such payments shall afford any basis for the granting of legal or equitable relief by any court against a party to such contract or agreement. [2] If an employer or other person submits a bill or invoice indicating a service charge, the total proceeds of such charge shall be remitted to the employees in proportion to the service provided by them. [3] Whoever violates any provision of this section shall be punished by a fine of not more than one thousand dollars and the court may require such employer or other person to make restitution for any tips or gratuities accepted or retained by him in violation of this section.
Section 152A has been on the books, in some form, since 1952. Originally, it consisted only of the first sentence. In 1966, the present third sentence (imposing a criminal fine for violation) was added, except the fine was $100; in 1980, it was increased to $1000. St. 1966, c. 350; St. 1980, c. 301. In 1983, the present second sentence (concerning distribution of employer-invoiced service charges) was inserted. St. 1983, c. 343.
Effective September 8, 2004, the statute was substantially overhauled. Subsection (a) of the new statute defines “wait staff employee,” “service employee,” “service bartender,” “service charge,” “tip,” and other terms. Subsections (b), (c) and (d) provide as follows:
(b) No employer or other person shall demand, request or accept from any wait staff employee, service employee, or service bartender any payment or deduction from a tip or service charge given to such wait staff employee, service employee, or service bartender by a patron. No such employer or other person shall retain or distribute in a manner inconsistent with this section any tip or service charge given directly to the employer or person.
(c) No employer or person shall cause, require or permit any wait staff employee, service employee, or service bartender to participate in a tip pool through which such employee remits any wage, tip or service charge, or any portion thereof, for distribution to any person who is not a wait staff employee, service employee, or service bartender. An employer may administer a valid tip pool and may keep a record of the amounts received for bookkeeping or tax reporting purposes.
(d) If an employer or person submits a bill, invoice or charge to a patron or other person that imposes a service charge or tip, the total proceeds of that service charge or tip shall be remitted only to the wait staff employees, service employees, or service bartenders in proportion to the service provided by those employees.
Nothing in this section shall prohibit an employer from imposing on a patron any house or administrative fee in addition to or instead of a service charge or tip, if the employer provides a designation or written description of that house or administrative fee, which informs the patron that the fee does not represent a tip or service charge for wait staff employees, service employees, or service bartenders.
Subsection (f) provides that violations shall be subject to the civil and criminal penalties imposed by c. 149, §27C.
B. Count I: Application of the Old Version of Section 152A
As noted above, the Complaint in this case was filed in July 2004, prior to the effective date of the new statute. Because the summary judgment record does not establish that any of the plaintiffs — with the exception of Kelly Daly — remained employed at The Beverly Depot after the new statute took effect, I can only assume here that all of the other plaintiffs’ claims fall under the old statute. This section discusses the *315 application of the old version of c. 149, §152A to the plaintiffs’ claims.
Neither the old nor the new version of the statute is the subject of any reported appellate decision.[3] Several decisions from judges of this Court have, however, addressed issues at least tangentially related to those in this case, as they arose under the old statute.
Nedved v. 1760 Society, Inc., 2004 WL 504800, 17 Mass. L. Rptr. 350 (Mass. Super. 2004; McCann, J.), and Chance v. Westban Hotel Venture, Suffolk Civil Action No. 97-4947, November 27, 2000 (Volterra, J.), held that the second sentence of the statute permitted an employer to distribute a portion of invoiced service charges for banquets and like functions, to banquet coordinators and other employees not directly involved in bringing food and drink to table.
Contrary holdings appear in the later cases of Calcagno v. High Country Investor, Inc., Essex Civil Action No. 03-0707, December 20, 2005 (Murtagh, J.), Michalak v. Boston Palm Corp., 2004 WL 2915452, 18 Mass. L. Rptr. 460 (Super. Ct. 2004; Hines, J.), and Williamson v. DT Management Co., 2004 WL 1050582, 17 Mass. L. Rptr. 606 (Mass. Super. 2004; Haggerty, J.). Each of these decisions construes the statute’s second sentence as requiring that tips go only to persons who actually served food or beverages to patrons.[4]
In a case involving ordinary restaurant service — not functions — the court held that a mandatory tip pool in which server tips were shared with the maitre d’, the sommelier, the bussers, and bartender did not violate the statute. Fraser v. Pears Co., Inc., 2003 WL 21385384, 16 Mass. L. Rptr. 255 (Mass. Super. 2003; Brady, J.).
This case does not present the issue addressed in the Calcagno, Michalak, Williamson, Nedved, and Chance cases. The plaintiffs here allege that they were required to share a portion of tips given them by customers (presumably, as cash left on the table or as an add-on to a credit card charge) for ordinary restaurant service. No “bill or invoice indicating a service charge” is alleged. The second sentence of section 152A therefore does not apply.
If the plaintiffs have a claim under the old statute, therefore, it is under the first sentence:
No employer or other person shall solicit, demand, request or accept from any employee engaged in the serving of food or beverage any payment of any nature from tips or gratuities received by such employee during the course of his employment, or from wages earned by such employee or retain for himself any tips or gratuities given directly to the employer for the benefit of the employee, as a condition of employment. . . (Emphasis supplied.)
It is unnecessary to decide, at this stage, whether The Beverly Depot could, or could not, lawfully compel the waitstaff to share tips with the kitchen staff under the old statute.[5] On the present summary judgment record, it suffices to note that the statute’s first sentence contains no restriction on the disposition of tips other than “as a condition of employment.” To so contort this language as to require the employer to put a stop to truly voluntary tip-sharing would be to ignore the fact that the statute imposes criminal penalties for its violation, and the principle that statutes carrying criminal penalties are to be construed narrowly (i.e., ambiguities are to be resolved in favor of the defendant). See Commonwealth v. Pagan, 445 Mass. 161, 167 (2005); Prozinski v. Northeast Real Estate Services, LLC, 59 Mass.App.Ct. 599, 602-03 (2003) (construing G.L.c. 149, §148).
The Swanson affidavit creates a genuine issue of fact as to whether or not the tip-sharing arrangement was “a condition of employment.” If it was not, it was lawful under the old statute. Summary judgment must therefore be denied as to Count I, as to all named plaintiffs except Daly.
C. Count I: Application of the New Version of Section 152A
The result is otherwise with respect to so much of Kelly Daly’s and similarly situated persons’ claims as relate to tip-sharing on and after September 8, 2004. Subsection (c) of the amended statute, which became effective on that date, is clear:
No employer . . . shall . . . permit any wait staff employee, service employee, or service bartender to participate in a tip pool through which such employee remits any wage, tip or service charge, or any portion thereof, for distribution to any person who is not a wait staff employee, service employee, or service bartender.
This means at least that an employer who knows that server tips are being shared with non-servers must make reasonable efforts to put a stop to the practice.
Summary judgment as to liability on Count I is therefore ALLOWED in favor of plaintiff Daly and similarly situated persons for claims arising on and after September 8, 2004.
D. G.L.c. 151, §§1 and 7
The plaintiffs assert that The Beverly Depot’s tip-sharing practice violated the minimum wage law, G.L.c. 151, §§1 and 7, because (a) their hourly wage was less than the basic minimum wage, and (b) the tip-sharing practice disqualified the employer from taking “tip credit”; i.e., from counting servers’ tips toward the minimum wage.
Under c. 151, §1 (as in effect from January 1, 2001 until earlier this summer), the minimum wage was $6.75 per hour,[6] “unless the commissioner [of labor] has expressly approved or shall expressly approve the establishment and payment of a lesser wage under the provisions of sections seven and nine.” Where the employee customarily receives tips as a part of her *316 income, section 1 must be read in conjunction with section 7, which provides:
In determining the wage an employer is required to pay a tipped employee, the amount paid to such employee by the employer shall be an amount equal to: (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on July 1, 1999; and (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in clause (1) and the wage in effect under section 1. The additional amount on account of tips may not exceed the value of the tips actually received by an employee. This paragraph shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this paragraph, and all tips received by such employee have been retained by the employee, except that this paragraph shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips. (Emphasis supplied.)
The commissioner’s regulation governing the compensation of a tipped employee appears at 455 C.M.R. 2.02. This provides (and has since prior to September 8, 2004) that a tipped employee must receive an hourly wage of at least $2.63; this plus tips must “equal[ ] or exceed! ] the basic minimum wage; and that tip credit only applies where
all tips received by the employee were either retained by him or her or were distributed to him or her through a tip-pooling arrangement. If the employee is engaged in the serving of food or beverages, such a tip-pooling arrangement must conform with the requirements of M.G.L.c. 149, §152A.
Under section 7 of the statute, it seems plain that if an employer is to take advantage of tip credit in order to pay a server an hourly wage of less than that set by section 1, it cannot require tip-pooling except “among employees who customarily and regularly receive tips.” With only a modicum of judicial notice, it seems equally plain that such a qualifying tip tool could not include kitchen staff, because kitchen workers do not “customarily and regularly receive tips” outside a tip-pooling or tip-sharing arrangement. The consequence is that if Barnsider did require servers to share their tips with kitchen staff, it could not claim “tip credit,” and it was therefore required to pay its servers the full hourly rate mandated by c. 151, §1.
Slightly less clear, at least for the period prior to September 8,2004, is whether a voluntary tip-sharing, such as Barnsider says — and the plaintiffs deny — existed at The Beverly Depot, would disqualify the employer from claiming tip credit against the minimum wage. Fundamentally, however, the statute is addressed to employers’ conduct; it does not purport to regulate what employees may choose to do with their compensation. I therefore read the last sentence of section 7 as providing that voluntary sharing of tips by the waitstaff with others would not affect the employer’s ability to count tips toward the minimum wage. This means that with respect to all plaintiffs except Daly, summary judgment must be denied.
With the 2004 amendment, however, the picture changes. The Commissioner’s regulation expressly limits qualifying tip-pooling arrangements to those which “conform with the requirements of M.G.L.c. 149, §152A.” This seems a reasonable exercise of the Commissioner’s regulatory power, and it means that because The Beverly Depot’s tip-sharing system, even if voluntary, was unlawful after September 8, 2004, the defendant on that date was required to put a stop to the practice, or to pay its servers at least $6.75 per hour.
I note in closing, as I did in opening, that the two sides’ affidavits stand in stark contrast. The plaintiffs aver that tip-sharing was imposed on them by management, who made it clear that their participation was a condition of working at The Beverly Depot. The defendants insist that the arrangement was “entirely voluntary . . . never anything that has ever been required by” the restaurant’s owners or managers.
This decision, too, has spoken in more or less black-and-white terms: “mandatory” versus “voluntary,” and so forth. It seems appropriate to acknowledge here that there may be implicit as well as explicit “conditions of employment,” and that such implicit conditions may arise from management’s tolerance of coercive behavior by some employees toward others, even without a directive or official policy. Cf. G.L.c. 15 IB, §1(18) (a), and the caselaw thereunder. The affidavits raise the possibility that something of the sort occurred among the waitstaff, the kitchen staff, and — by express direction or by tacit assent — the managers of The Beverly Depot.
The dispute on this issue of fact is, as I have held, immaterial to claims arising on and after September 8, 2004: the new statute is clear that an employer may not even “permit” tip-sharing with non-servers. Whether and how a jury ought to be instructed on this and other legal issues with respect to the earlier claims is best left to the trial judge. For now, it is enough to say that the affidavits raise a genuine issue concerning whether or not tip-sharing was a condition of employment at The Beverly Depot, and that the existence of the issue precludes the entry of summary judgment for the plaintiffs on the pre-amendment, but not on the post-amendment, claims.
ORDER
For the foregoing reasons, the plaintiffs’ Motion for Summary Judgment is ALLOWED IN PART, in that partial summary judgment shall enter as to liability on Counts I and II, in favor of plaintiff Kelly Daly and similarly situated persons, for claims arising on and *317 after September 8, 2004. The Motion is otherwise DENIED.
A separate Order will issue, scheduling a Final Pretrial Conference in this matter.

Canario’s affidavit (¶2) also purports to describe the state of affairs before he came to work at The Beverly Depot. Because this portion of the affidavit is explicitly based on hearsay, I have disregarded it. See Mass.R.Civ.P. 56(e).

Counts III through VIII assert common-law claims which are not the subject of the present Motion.

In an unreported decision the Appeals Court affirmed the dismissal, on limitations grounds, of a complaint for violation of section 152A, but without discussing the statute’s construction. Mulhall v. Sheraton Needham Hotel 62 Mass.App.Ct. 1104(2004).

In Cooney v. Compass Group Foodservice, Civil Action No. 02-3159 (Middlesex Sup. Ct. January 7, 2004; Muse, J.), referenced in the later reported decision in the same case at 2004 WL 3120562 (Mass. Super. 2004; Lauriat, J.) (18 Mass. L. Rptr. 567), the court ruled that whether an invoiced “service charge” for functions could be used for facilities’ upkeep and maintenance depended on how the facility represented, and how customers understood, the charge.

In the Fraser case, the court opined that the phrase “solicit, demand, request or accept from any employee ...” in the old statute applied to tips left on the table and collected by the server, and “retain for himself’ referred to tips added to a credit card charge processed by the employer. Following a comprehensive discussion of the statute’s language and apparent purposes, and with an acknowledgment of the principle that “(s]tatutes penal in nature are to be strictly construed... and uncertainly resulting from a literal reading is to be resolved in favor of defendant,” the court held that both of the just-quoted phrases prohibited “skimming” by the employer, but not the redistribution of tips among its employees. The soundness of this conclusion, and its application to the somewhat different facts presented by this case, are for another day.

This hourly rate has risen over time, but at all times material hereto it exceeded the $2.63 hourly rate paid the plaintiffs.